693 So.2d 1232 (1997)
STATE of Louisiana
v.
Kerry John PARFAIT.
No. 96 KA 1814.
Court of Appeal of Louisiana, First Circuit.
May 9, 1997.
*1235 Margaret S. Sollars, Indigent Defenders Counsel, Thibodaux, for Defendant/Appellant Kerry John Parfait.
Stephen P. Callahan, Assistant District Attorney, Houma, for Plaintiff/Appellee State.
Before GONZALES and KUHN, JJ., and CHIASSON[1], J. Pro Tem.
KUHN, Judge.
The defendant, Kerry John Parfait, and a codefendant, Dominic John Piazzo, Jr., were charged by bill of information with possession of cocaine, in violation of La. R.S. 40:967C. The defendant pled not guilty and, after trial by jury, was found guilty as charged.[2] He received a sentence of five years at hard labor, with credit for time served. The defendant has appealed, alleging seven assignments of error,[3] as follows:
1. The trial court erred in granting the State's challenges for cause of four prospective jurors.
2. The trial court erred in failing to grant the defendant's challenge for cause of a prospective juror.
3. The trial court erred in denying the defendant's motion to suppress evidence.
4. The trial court erred in denying the defendant's motion for a mistrial.
5. The trial court erred in denying the defendant's motion for new trial.
6. The trial court erred in denying the defendant's motion for post verdict judgment of acquittal.
7. The trial court erred in imposing an excessive sentence.

FACTS
Shortly after midnight on March 10, 1995, Houma Police Officers Jude McElroy and Kyle Faulk observed four persons standing outside a Shop-Rite Store in the area of Park Boulevard and New Orleans Boulevard. One of them, later identified as Dominic Piazzo, was observed with an open beer can, which was a violation of a local open container ordinance. As the officers approached, all four of these persons got into the front seat of an extra cab Mitsubishi pickup truck. The driver, Mr. Piazzo, began backing up the truck until he was ordered by the officers to stop.
Officer McElroy approached the driver, while Officer Faulk approached the passenger side of the truck. Piazzo was ordered out of the truck and was arrested for the open container violation. Meanwhile, the officers observed movement inside the truck among the other three passengers, especially the defendant. It appeared as if the defendant was trying to hide something under the front seat. The defendant also was observed to remove a black jacket and place it in the back seat.
Meanwhile, Officer Kirk Bergeron arrived in response to the request for a backup officer prompted by the number of persons in the vehicle. The three passengers were ordered out of the truck, and Officers Faulk and Bergeron began to obtain some identification from them. The defendant initially *1236 told Officer Bergeron that his name was John Parfait. He then stated that his name was Kerry Parfait. Officer Faulk identified the defendant and, when a warrant check revealed an outstanding warrant for his arrest, the defendant heard this message over the radio and fled on foot.
After a short chase, the defendant was apprehended and returned to the scene. The officers obtained consent to search the truck from Mr. Piazzo. During the search, a loaded gun was found under the front seat and a medicine bottle containing approximately seven pieces of crack cocaine was found in the area where the defendant had been sitting. Inside the black jacket on the back seat, the officers discovered another medicine bottle containing cocaine "chips and dust" and a socket wrench, apparently modified to be used as a crack pipe. At this point, the other two occupants of the truck, Linus Billiot and Cordella Lacobon, also were placed under arrest.

ASSIGNMENT OF ERROR NUMBER ONE:
In this assignment of error, the defendant contends that the trial court erred in granting the State's challenges for cause of prospective jurors Jessie Matthews, Elsie Bolden, Danyell Evans, and Timothy Lewis.
La.Code Crim. P. art. 797 provides, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court;....
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law reasonably may be inferred. State v. Thompson, 489 So.2d 1364, 1370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). However, the trial court is vested with broad discretion in ruling on a challenge for cause; its ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. State v. Dufrene, 461 So.2d 1263, 1266 (La.App. 1st Cir.1984).
All four of these prospective jurors expressed problems with sitting in judgment of others. However, in his brief to this Court, the defendant contends that "these jurors were rehabilitated and their answers, taken as a whole, did not show an inability to be fair and impartial." He concludes: "[T]heir answers indicated appropriate responses that jury duty is not to be taken lightly, particularly when a guilty verdict can have such an impact on a person's life." Because the State exhausted its peremptory challenges, the defendant concludes that the granting of these challenges for cause had the effect of giving the State extra challenges and resulted in reversible error. See La. Code Crim. P. art. 800 B.
Jessie Matthews was the first prospective juror to express an inability to judge another person. The trial court specifically questioned Ms. Matthews and asked her if she could perform her legal duties if he instructed her to do so; and she replied: "It's hard." When the trial court asked the other jurors regarding whether any of them felt the same way, Elsie Bolden and Timothy Lewis responded in the affirmative. When the trial court asked Ms. Bolden if she could put aside her feelings if it instructed her to do so, she replied: "No." When the court questioned Mr. Lewis and asked if it instructed him to put personal feelings aside, would he still feel some reservations about passing judgment, Lewis replied: "Yes." During voir dire examination *1237 by the prosecutor, Ms. Bolden and Mr. Lewis maintained their earlier answers that they would have difficulty sitting in judgment of someone. Danyell Evans indicated that a family member had been convicted of a sexual offense, and she expressed a belief that he had not been treated fairly by the District Attorney's Office. In later questioning by the prosecutor, Ms. Evans also expressed difficulty sitting in judgment of another person. Indicating that her conscience might cause her to have difficulty sending a person to jail, Ms. Evans elaborated: "It's like somebody's life is in your hands. You know?" At this point, Ms. Matthews exclaimed: "Amen."
When defense counsel was attempting to rehabilitate some of these prospective jurors and asked if they could make a determination as to whether or not the State had met its burden of proof, Ms. Evans replied: "I don't know. It's just the idea of sending somebody away." Ms. Matthews immediately replied: "It's hard."
When the prosecutor challenged these four prospective jurors for cause, defense counsel responded that he believed each one had been rehabilitated. However, reviewing its notes regarding the prospective juror's responses, the trial court concluded that they had not been rehabilitated and granted these challenges for cause.
These rulings were correct. Despite attempts to rehabilitate these prospective jurors by the trial court, the prosecutor, and defense counsel, their answers taken as a whole indicate that they were never rehabilitated and that they would have been unable to judge another person. Additionally, Ms. Evans harbored feelings that a family member had been unfairly treated by the District Attorney's Office.
After considering the above responses from these prospective jurors, we find no abuse of discretion in the trial court's rulings granting these challenges for cause. This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWO:
In this assignment of error, the defendant contends that the trial court erred in denying his challenge for cause of prospective juror Glaise Chaisson. Specifically, the defendant contends that Mr. Chaisson was unable to be a fair and impartial juror on the basis of his friendship with Officers Bergeron and Faulk, his belief that convicted felons should serve their entire sentences, and a personal experience wherein a convicted drug offender tried to sell drugs to his children.
It is well-settled that relationship to a law enforcement officer is not of itself ground for a challenge for cause. Rather, the question presented is whether or not the prospective juror could assess the credibility of each witness independently of his relationship with members of law enforcement. State v. Collins, 546 So.2d 1246, 1253 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La. 1990).
During voir dire examination, the following colloquy occurred between the trial court and Mr. Chaisson:
BY THE COURT:
Ladies and gentlemen, do you know any of the individuals who have been named by Mr. Callahan or Mr. Joffrion? Okay, Mr. Chaisson.
BY JUROR CHAISSON:
Kirk Bergeron and Officer Kyle.
BY THE COURT:
Do you feel because you know these people and your knowledge of these people do you, first of all, think that they're automatically believable? Are you going to believe them over anyone else? You'd be able to fairly and impartially judge all of the witnesses and all of the evidence, sir?
BY JUROR CHAISSON:
Yes.
Later during voir dire examination, the following colloquy occurred between the prosecutor and Mr. Chaisson:
BY MR. CALLAHAN:
Okay. Other people have had experiences that aren't so positive. A family member gets in trouble, gets convicted of a crime, something along those lines. And they have a more negative view. And part of what we have to explore is, *1238 have any of youand with the exception of Ms. Vega knowing that her husband's in law enforcementhave any of you had any experience with either yourself, your family or your friends that has led you or affected the way you look at the law enforcement system, meaning the law enforcement officers and the judicial system? Mr. Chaisson.
BY JUROR CHAISSON:
They get convicted, two years. They get our (sic) in two and a half, three months. I don't agree with that.
BY MR. CALLAHAN:
You're notyou don't agree with the fact that people can get paroled quickly.
BY JUROR CHAISSON:
No. They (sic) back on the street.
BY MR. CALLAHAN:
I'm not either, but I mean
BY MR. CHAISSON:
That's my opinion.
BY MR. CALLAHAN:
Okay. So youbut that's more of a general way you look at the system. You think the system doesn't work that well. Fair to say? You don't like that idea.
BY JUROR CHAISSON:
I don't like that.
BY MR. CALLAHAN:
Okay. But would that cause you to have an opinion either way about Mr. Parfait's guilt or innocence if you served on the jury in this case?
BY JUROR CHAISSON:
No.
Finally, the following colloquy occurred during defense counsel's voir dire examination of Mr. Chaisson:
BY MR. JOFFRION:
Mr. Chaisson, you say you know a couple of the police officers involved in this case. How well do you know them?
BY JUROR CHAISSON:
I was raised with Officer Bergeron.
BY MR. JOFFRION:
You see him?
BY JUROR CHAISSON:
We were neighbors. I see him.
BY MR. JOFFRION:
Do you feel that you owe any sort of duty to him, to side with the police officers on their side, and the D.A.'s Office?
BY JUROR CHAISSON:
No, I don't.
BY MR. JOFFRION:
So you don't feel that it would affect your friendship with him any if you were to serve on this jury and it would come back not guilty?
BY JUROR CHAISSON:
No.
BY MR. JOFFRION:
You also made a comment about you don't like the fact that a person can be sentenced to "X" number of years and he only has to serve a certain percentage of that time and he's on the streets.
BY JUROR CHAISSON:
That's true. That just recently happened around my house where a young fellow was involved with drugs was convicted, and apparently according to the court, without reasonable doubt. Two and a half months later he's knocking on the door and offering the stuff to my kids.
BY MR. JOFFRION:
That was a drug case?
BY JUROR CHAISSON:
Yeah, that's right. He's offering some very strong dope to my kids. I called and made complaints about that. I think if he was convicted he should serve his time.
BY MR. JOFFRION:
Okay. The fact that he was arrested, by offering drugs to your kids would that in any way affect your decision here today because this is a drug case?
BY JUROR CHAISSON:
This is not the same person. It's got nothing to do with that.
BY MR. JOFFRION:
So you can put all of your feelings about that aside, that this person that *1239 you feel should still be locked up is now walking the streets?
BY JUROR CHAISSON:
Well, if I'm asked to judge this case, I'll be able to.
BY MR. JOFFRION:
Right. And you feel you can do that?
BY JUROR CHAISSON:
I have to. I'm obligated as a person to do that.
When defense counsel challenged Mr. Chaisson for cause, the following colloquy occurred:
BY MR. JOFFRION:
I would also like to excuse Mr.I think his first name is Glaise Chaisson, number 15. He said he grew up with two of the officers involved in this case. He's very close friends with them. And he stressed strong opinions about a previous drug case to where the defendant was convicted and back out on the streets after serving, I would assume, a third of his sentence and attempted to sell drugs to his son. I think he has a deep rooted opinion in this matter, that he will not be fair and impartial, especially since this is a drug case.
BY MR. CALLAHAN:
What Mr. Chaisson said was he knew Officers Bergeron and Faulk, that he grew up around them. He didn'tI didn't hear an expression of a close personal relationship. What he said was he has concerns about someone who was convicted of a drug offense not serving their entire sentence. It's a case that his family was involved in. But I think he was quite clear in saying that that had nothing to do with Mr. Parfait and he would do his duty, and he had no other choice but to do his duty as a juror. And I thought he was quite adamant about it. He clearly differentiates in his own mind between the two situations.
BY THE COURT:
I'm going to deny the challenge for cause on Mr. Chaisson. He said that this was a separate case, he would put aside those feelings. I'll note your objection, Counselor.
Contrary to the defendant's arguments, Mr. Chaisson's responses quoted above indicated that he would not be affected by his friendship with these police officers. Furthermore, while he candidly expressed his views against the early release from prison of convicted felons and related an experience wherein one such early released felon had tried to sell drugs to his children, Mr. Chaisson stated that he was "obligated" to set aside his feelings from that experience if chosen to judge the defendant's case. Accordingly, we find no abuse of discretion by the trial court in denying defendant's challenge for cause of Mr. Chaisson.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment of error, the defendant contends that the trial court erred in denying his motion to suppress physical evidence. Specifically, he contends that he was illegally detained after the stop of the truck because only the driver, Mr. Piazzo, was observed to violate any laws. He also contends that Mr. Piazzo did not consent to the search of the truck.
Initially, we note that the police may order the passengers to exit a vehicle during a routine traffic stop, although only the driver has committed an offense. Maryland v. Wilson, ___ U.S. ___, ___, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997). The defendant contends that he should have been free to leave the scene of the traffic stop and, therefore, his questioning and subsequent arrest after he tried to flee were illegal. However, once the police officers learned the defendant's correct name and received information that there was a pending warrant for his arrest, the defendant certainly was not free to leave. A major question left open by the recent decision in Maryland v. Wilson is the extent to which the police may ask questions of passengers detained during a traffic stop in order to learn their identity or verify information received from the driver and/or owner of the vehicle. Nevertheless, we need not address this question herein since the *1240 instant search and seizure were based upon consent.
Of course, the officers who searched the truck did not have a search warrant. However, a consent to search is a recognized exception to the warrant requirement. Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Musacchia, 536 So.2d 608, 610-611 (La.App. 1st Cir.1988).
Both at the motion to suppress hearing and at trial,[4] the testimony of Officers Jude McElroy and Kyle Faulk established that Mr. Piazzo freely and voluntarily consented to a search of his truck. Mr. Piazzo was the driver of the truck, and he informed the officers that he owned it. He was arrested for a violation of the open container ordinance. After Mr. Piazzo was advised of his Miranda rights, Officer McElroy requested permission to search the truck. Mr. Piazzo claimed that he did not have anything to hide and gave permission for the search. When the search was conducted, both the defendant and Mr. Piazzo were under arrest. The other two passengers were placed under arrest after the cocaine and the crack pipe were discovered during the search.
In his brief, the defendant asserts the officers immediately began a search of the truck without obtaining consent. He points to the testimony of Mr. Piazzo and Mr. Billiot on this point and argues that they were more credible than the police officers because there was no written consent to search waiver form and Mr. Piazzo was not told that he had a right to refuse a search.
When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was freely and voluntarily given. Whether or not consent was voluntarily given is an issue of fact to be determined by the fact finder in light of the totality of the circumstances. State v. Rawls, 552 So.2d 764, 765 (La.App. 1st Cir.1989). An oral consent to search is sufficient; a written consent is not required. State v. Ossey, 446 So.2d 280, 287 n. 6 (La.), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). Furthermore, informing a suspect of his right to refuse consent to a search is not required. Instead, the lack of such a warning is only one factor in determining the voluntary nature of consent to a search. State v. Overton, 596 So.2d 1344, 1353 (La.App. 1st Cir.), writ denied, 599 So.2d 315 (La.1992). The trier of fact may consider the credibility of the witnesses, as well as the surrounding circumstances, in determining the issue of voluntariness. State v. Rawls, 552 So.2d at 765. When we review a trial court ruling based upon findings of fact, great weight is placed upon the determination of the court below because it had the opportunity to observe the witnesses and weigh the relative credibility of their testimony. State v. Carr, 530 So.2d 579, 589 (La.App. 1st Cir.), writ denied, 533 So.2d 354 (La.1988), cert. denied, sub nom., Carr v. Louisiana, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989).
In denying the motion to suppress, the trial court stated that it believed the officers' testimony. This credibility determination is supported by the record. In fact, at the motion to suppress hearing, Mr. Piazzo admitted on cross-examination that he could not remember whether or not he gave the officers permission to search the truck. When Mr. Billiot was asked if he heard the officers request Mr. Piazzo's permission to search the truck, he replied: "Not that I can remember." Neither witness positively testified that the officers did not obtain Mr. Piazzo's consent for a search of the truck.
Finally, the defendant apparently argues that, if Mr. Piazzo did consent to a search of his truck, such consent was tainted by the defendant's allegedly illegal arrest. This argument is frivolous. Mr. Piazzo's arrest for the open container violation and his decision to consent to a search of the truck was independent of, and separate from, the *1241 defendant's arrest for an outstanding warrant.
Considering all of the above, we find no error in the trial court's denial of the motion to suppress physical evidence. This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial when the only defense witness, Mr. Billiot, was arrested and placed in handcuffs during the prosecutor's closing argument.
La.Code Crim. P. art. 775 requires a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized under Articles 770 or 771. However, mistrial is a drastic remedy. It has been held that when the conduct does not fall within the mandatory mistrial provisions, the trial court has the sound discretion to determine whether or not the activity or comment is so prejudicial to the defendant that he could not receive a fair trial. State v. Spooner, 550 So.2d 1289, 1296-1297 (La.App. 1st Cir.1989), writ denied, 566 So.2d 394 (La. 1990).
Immediately after the trial court charged the jury and it was retired for deliberations, defense counsel requested a mistrial based upon the allegedly prejudicial impact of Mr. Billiot's arrest inside the courtroom. It was noted that the motion was timely because counsel had agreed to wait until the conclusion of closing arguments before resolving this issue.
After considering the arguments of counsel, the trial court denied the motion for a mistrial. The trial court expressed a belief that the jury did not see the incident and, therefore, the defendant had made no showing of prejudice. However, the court further ruled that, if the jury returned a guilty verdict, the jurors would be questioned individually in order to determine whether or not they had witnessed the incident and been influenced by it. Defense counsel did not object to this procedure.
After the jury returned a guilty verdict, the six jurors were individually questioned by the trial court and defense counsel. Only one juror, Janelle Moen, recalled anything about Mr. Billiot's arrest. The only thing Ms. Moen observed was that Mr. Billiot was brought into the courtroom and then taken out of the courtroom. She stated that she did not notice anything unusual and indicated that the only thing mentioned during jury deliberations about this subject was that Mr. Billiot was brought into the courtroom and then taken outside. She concluded that the incident did not have any bearing on what the jury did or said during deliberations. When defense counsel questioned Ms. Moen further and specifically asked whether or not she noticed if he had been handcuffed, she replied: "I don't know."
The defendant notes in his brief that, because Ms. Moen indicated that some other juror raised the issue of Mr. Billiot's removal from the courtroom, but none of the other jurors referred to the incident, at least one juror was untruthful. We do not agree with this conclusion. Since Ms. Moen indicated that the incident was raised in passing and was clearly insignificant to the jury deliberations, there is no indication that the other five jurors were being untruthful when they indicated that they did not witness Mr. Billiot's removal from the courtroom. The defendant also states: "None of the jurors wanted to have a mistrial, especially after a verdict had been determined." However, it should be noted at this point that none of the jurors were specifically informed of the reason they were being questioned after the verdict. Furthermore, since the trial was concluded, the trial court was not required to grant a mistrial. Instead, the trial court would have been required to grant the defendant a new trial if, after the verdict, questioning of the jurors revealed that they had been influenced to such an extent by Mr. Billiot's removal from the courtroom that the defendant was unduly prejudiced. See La.Crim. P.Code art. 851.
Granted, this entire matter could have been avoided if the prosecutor had instructed that Mr. Billiot be arrested and removed from the courtroom out of the jury's *1242 presence. On the other hand, there is absolutely no evidence, nor any suggestion by the defense, that the prosecutor or the police deliberately arrested Mr. Billiot in an effort to prejudice the defendant. We find no error in the trial court's ruling denying the defendant's request for a mistrial. At that point in the proceedings, the defendant clearly had not established that the jurors had seen Mr. Billiot's arrest. Questioning the jurors on this issue prior to their deliberations could have caused even more prejudice to the defendant. Furthermore, once the guilty verdict was returned and the jurors were questioned individually, their responses make it clear that Mr. Billiot's arrest and removal from the courtroom during the prosecutor's closing argument had no effect whatsoever upon their deliberations.
Whether reviewing this issue under a mistrial standard or a motion for a new trial standard, we find no suggestion that the jury was unduly influenced by Mr. Billiot's arrest in the courtroom. As the defendant has failed to establish any prejudice whatsoever, there was no error in the trial court's ruling denying the motion.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FIVE:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a new trial. In his brief to this Court, in support of his assertion that the trial court should have granted a new trial, the defendant refers to all of the arguments relating to the other assignments of error. Having found no merit to the other assignments of error considered herein, we likewise find no merit to the defendant's cumulation of errors argument.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SIX:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for post verdict judgment of acquittal.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.Code Crim. P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984).
The defendant does not contest the fact that cocaine was recovered from the vehicle in which he was a passenger. Instead, he raises the issue of his identification as the perpetrator. Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Royal, 527 So.2d 1083, 1086 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
In his brief, the defendant contends that the trial court erred in denying his motion for a "directed verdict" on the basis that he was never identified as the perpetrator. After all of the evidence had been presented, and prior to closing arguments, the jury was removed from the courtroom. Defense counsel made a motion for a directed verdict on the basis that the defendant had not been identified by any of the witnesses. After considering responses by the prosecutor and defense counsel, the trial court denied the motion.
Initially, we note that the Code of Criminal Procedure does not provide for such a motion. La.Code Crim. P. art. 778 provides for a motion for a judgment of acquittal, but only in a bench trial. It is well settled that the trial court has no authority to grant a directed verdict in a criminal jury trial. La.Code Crim. P. art. 778; State v. Patterson, 540 So.2d 515, 517 (La.App. 1st Cir.1989).
Furthermore, in response to the defendant's motion, the prosecutor indicated that both Mr. Billiot and Ms. Lacobon had identified the defendant. The prosecutor indicated that Ms. Lacobon identified the defendant *1243 by pointing at him and calling him by the nickname "Yogi," and the trial court agreed. The trial court also observed that all of the witnesses looked at the defendant and concluded that there was no doubt or dispute as to the defendant's identity. We find no error in the trial court's ruling. The defendant was identified by the witnesses as Kerry Parfait, the perpetrator herein; therefore, this argument regarding a lack of identification is meritless.
The defendant also raises the issue of the conflicting testimony of the witnesses regarding the possession and/or ownership of the black jacket in which the cocaine was discovered. The State was not required to prove actual possession; it needed only to show that the defendant exercised dominion or control over the illegal substance. State v. Hills, 498 So.2d 240, 243 (La.App. 1st Cir. 1986), writ denied, 503 So.2d 13 (La.1987).
In order for a person to constructively possess a drug, he must either own it or have dominion or control over it. The State also must show that the defendant had guilty knowledge of the illegality of the drug. The fact finder may draw reasonable inferences to support these conclusions based upon the evidence presented at the trial. State v. Tasker, 448 So.2d 1311, 1314 (La. App. 1st Cir.), writ denied, 450 So.2d 644 (La.1984). The defendant's actual and/or constructive possession of the cocaine could be reasonably inferred from the fact that the officers saw him remove the black jacket and place it on the back seat as they approached the vehicle. Such behavior established the defendant's guilty knowledge.
Although Ms. Lacobon testified that she was wearing the black jacket, she also testified that the jacket belonged to the defendant and she had gotten the jacket from him because she was cold. In finding the defendant guilty as charged, the jury obviously accepted the testimony of Officers McElroy and Faulk that they saw the defendant remove the jacket which contained the cocaine and place the jacket on the back seat, or else they accepted Ms. Lacobon's testimony that the jacket belonged to the defendant. To the extent that the testimony of Mr. Billiot and Ms. Lacobon conflicted with that of the officers, we note that, as the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d at 38. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38.
On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). Moreover, the defendant's brief completely ignores the evidence that the defendant constructively possessed, if not actually possessed, the other container of cocaine which was recovered on the front seat in the area where the defendant had been seated prior to exiting the vehicle.
After a careful review of the record, we find the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded the State negated any reasonable probability of misidentification and proved beyond a reasonable doubt that the defendant was guilty of possession of cocaine. Accordingly, the trial court did not err in denying the defendant's motion for post verdict judgment of acquittal.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SEVEN:
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence. Specifically, referring to the Sentencing Commission Guidelines, the defendant argues he should have received a sentence of two to four years under grid cell G-8. However, 1995 La. Acts No. 942, § 1, effective August 15, 1995, repealed the provision in La.Code Crim. P. art. 894.1 A requiring a trial court to consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission. As the defendant was sentenced on May 17, 1996, *1244 the trial court was not required to consider the Sentencing Commission Guidelines.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La. Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Lewis, 489 So.2d 1055, 1061 (La.App. 1st Cir.), cert denied, 493 So.2d 1218 (La. 1986).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
At the sentencing hearing, the trial court provided the following reasons for imposing the maximum sentence of five years at hard labor. The trial court reviewed the defendant's criminal record, which consisted of "a number of arrest (sic) and misdemeanor matters in which Mr. Parfait has been involved." The court also noted that additional charges currently were pending against the defendant. Although the court did not list these pending charges, the record indicates that they were: possession of cocaine; resisting by flight; reckless operation; no driver's license; possession of drug paraphernalia; and resisting an officer. Because of his criminal record and pending charges, the trial court found an undue risk that the defendant would "continue the pattern of crime involved with drugs and alcohol" if given a suspended sentence and placed on probation. Reviewing the facts of the instant offense, the trial court found that the defendant created a hazardous situation when he ran from the police. In our view, the trial court complied with the Article 894.1 criteria.
After the sentence was imposed, defense counsel made an oral motion to reconsider sentence based upon the defendant's first felony offender status, the large number of dependents he supports, and his health problems. After specifically addressing each of these mitigating circumstances, the trial court denied the motion to reconsider.
This Court has stated that the maximum sentence may be imposed only in cases involving the most serious offenses and worst offenders. State v. Easley, 432 So.2d 910, 914 (La.App. 1st Cir.1983). When reviewing the facts of the instant offense at the sentencing hearing, the trial court also noted that the defendant could have been charged with the more serious offense of possession of cocaine with intent to distribute.[5] We find that the instant offense was the worst type of offense in the category of possession of cocaine, since the amount involved could have led to a charge of possession with intent to distribute. Although the instant offense was the defendant's first felony conviction, he did have an arrest record; and felony and misdemeanor charges were pending against him.
Considering the reasons for sentencing given by the trial court, the circumstances of the instant offense, and the defendant's criminal record and pending charges, we conclude the instant sentence is not excessive.
This assignment of error is meritless.
AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record reflects that, immediately prior to the instant trial, the charge against Piazzo was severed. He is not a party to this appeal.
[3] The record does not contain any assignments of error. The assignments of error are taken from the defendant's brief. Although the defendant did not properly designate these assignments of error as required by La.Code Crim. P. arts. 844, 916(1) and (5), and 920, this Court is bound to review the errors assigned and argued in his brief in accordance with the Supreme Court's ruling in State v. Galliano, 94-2030, 94-2280 (La.1/6/95); 648 So.2d 911. See State v. Galliano, 93-1101, p. 2 n. 1 (La.App. 1st Cir. 5/5/95); 655 So.2d 538, 540 n. 1.
[4] In determining whether or not a ruling on a motion to suppress was correct, this Court is not limited to the evidence adduced at the hearing on the motion. Instead, we may consider all pertinent evidence given at the trial of the case. State v. Merchant, 490 So.2d 336, 339 n. 2 (La.App. 1st Cir.), writ denied, 496 So.2d 326 (La. 1986).
[5] The trial court's conclusion that the evidence in the instant case might have supported a charge for a more serious offense was an appropriate sentencing consideration. See State v. Wooden, 572 So.2d 1156, 1161 (La.App. 1st Cir.1990); State v. Heath, 447 So.2d 570, 577 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La. 1984).