713 So.2d 1214 (1998)
STATE of Louisiana
v.
Ernest FORD.
No. 97 KA 2019.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
*1215 J. Wilson Rambo, Louisiana Appellate Project, Monroe, for Defendant-Appellant Ernest Ford.
Walter Reed, District Attorney by Terry M. Boudreaux, Special Appeals Counsel, Gretna, for Plaintiff-Appellee State.
*1216 Before GONZALES, PARRO and GUIDRY, JJ.
GUIDRY, Judge.
Defendant, Ernest Ford, was charged by bill of information with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Defendant entered a plea of not guilty. After a jury was selected, the trial was recessed. Thereafter, the trial court conducted a hearing on defendant's motions to suppress physical evidence and statements. Following the denial of these motions, defendant withdrew his earlier plea of not guilty and pled guilty as charged, reserving his right to appeal the adverse rulings on the motions. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to imprisonment at hard labor for ten years without benefit of parole and imposed a fine of $1000.00.[1] Defendant has appealed, urging three assignments of error.
At the suppression hearing, the state presented the testimony of Elise Lewis (Lewis) and Slidell City police officers, Lieutenant Joe Triolo (Triolo), Corporal Keith McQueen (McQueen), and Lieutenant Rockwell McLellan (McLellan). Defendant and Delores Faciane (Delores) testified on his behalf. According to Lewis, at about 6:00 a.m. on April 1, 1996, a man came to her residence in Slidell, Louisiana, and knocked at her door. He was looking for her nephew, Ike Faciane. Lewis told the man her nephew was not there. The man walked to his car and reached inside. Thereafter, Lewis observed the man firing a gun into the air. After the man put the gun inside the car, he returned to her door and knocked again. After he left, Lewis went to her sister's house and phoned police.
Triolo, McQueen, and Officer Dennis Widener (Widener) responded to the call. Widener saw a car parked at Delores' residence, about a hundred yards from Lewis' home. Triolo testified that he and Widener approached Delores' residence and she came to the door. The officers asked who had been driving the car and Delores indicated it was defendant. Delores invited Triolo and Widener into the residence to talk to defendant. Triolo advised defendant of his Miranda rights, informed him of the matter being investigated, and asked him if he would step out into the yard. McQueen brought Lewis to Delores' house to see if she could identify the car and defendant. Lewis identified the vehicle and positively identified defendant as the man who had earlier been at her house.
According to Triolo, Widener, McQueen and he all read and advised defendant of his Miranda rights. Triolo did not obtain a written waiver of rights and had no knowledge of any other officer having done so. Triolo was of the opinion that defendant understood the rights. Defendant waived his rights and agreed to give Triolo a statement. Triolo testified no force or threats were used to obtain the statement and there was no promise of anything in return for the statement.
Triolo stated that, during initial questioning, defendant denied being in possession of a gun and stated that a vehicle had backfired. It was during this questioning about the gun that Delores told the officers that she had no guns in her house and that the officers could check her house to confirm this. At that point, defendant and his girlfriend were sitting on a couch in the living room. Widener stooped and immediately retrieved a handgun from beneath the couch, which he seized. Triolo testified that defendant was then placed under arrest. Delores became angry and hostile, stating that the officers had no right to undertake a search for the weapon.
According to Triolo, he and Widener questioned defendant again about shots having been fired. At that time, defendant stated: "I'm in enough trouble now, the gun is stolen."
McQueen testified that he spoke with defendant while transporting him from Delores' residence to the Slidell City Police Department, *1217 but only after he gave defendant Miranda warnings and defendant acknowledged he understood his rights. While talking to McQueen, defendant stated that he had obtained the handgun from a man in St. Bernard Parish. Initially, defendant stated the shots were fired by someone else. Later, he stated it was a backfire, before he admitted he had fired the gun into the air to wake up Ike Faciane, whom he assumed was asleep inside Lewis' house.
McLellan testified that, on April 1, 1996, he approached defendant at the St. Tammany Parish Jail. Prior to any questioning, McLellan gave defendant his Miranda warnings. Defendant acknowledged that he understood his rights and wanted to make a statement. During McLellan's interview of defendant, defendant made an oral statement.[2] No written waiver of rights form was executed. McLellan stated that he did not threaten defendant in any way. Nor did he promise defendant anything in return or tell defendant that he would go easy on him if he cooperated. Although McLellan did not recall whether or not he told defendant it is often helpful to cooperate with an investigation, he acknowledged that, if his report states that he made such a statement to defendant, the report would be accurate.[3]
Concerning whether or not there had been an express waiver of Miranda rights, McLellan was questioned on cross-examination as follows:
Q. At any time when you verbally advised Mr. Ford of his rights, did he verbally say I waive those [rights] and give you a statement?
A. I don't recall. If he would not have or if [he] had asked for an attorney, I wouldn't have said anything more to him.
Q. Did he ever say I understand these rights and I'll waive them? Did he ever say anything like that?
A. I don't recall him saying one way or the other.
Delores testified that when the police came to her door, they asked who owned the parked car, and she stated it was defendant's vehicle. They asked where defendant was and, with the door open, she indicated where defendant was sitting. According to Delores, she never invited the police into her home. Instead, they simply walked around her and entered. When Lewis identified defendant, Triolo was standing outside by the front door. The other officer (Widener) came inside and, without requesting or receiving Delores' consent to search, began searching. Specifically, Delores denied telling the officers she did not know anything about any guns in her house and that they could look if they wanted.
Consistent with Delores' testimony, defendant stated that the police never asked Delores if they could come in and search her home. Regarding the administration of Miranda rights to him, defendant acknowledged he heard the rights and understood them but maintained he never waived those rights.
At the conclusion of the suppression hearing, the trial court ruled the statement given to McQueen during transit to the city jail and the subsequent statement to McLellan were admissible. There was no ruling as to the admissibility of the statements preceding those made to McQueen and McLellan; and, *1218 because defendant did not request such a ruling, he apparently did not challenge the admissibility of those statements. The final ruling of the court was that the gun was admissible evidence seized during a consensual search; and, in so ruling, the court indicated its decision was based on an assessment of the credibility of the witnesses.

MOTION TO SUPPRESS PHYSICAL EVIDENCE
Defendant contends the trial court erred by failing to suppress the gun. He argues its seizure was invalid, because the testimony was a "toss-up" as to whether or not Delores gave the officers a knowing, intelligent, and voluntary consent to search her residence. In support of his claim that the search was not consensual, defendant cites the failure of the officers to advise Delores of the right to refuse giving consent.
A valid consent search is a well-recognized exception to the warrant requirement, but the burden is upon the state to prove that the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. State v. Edwards, 434 So.2d 395, 397 (La. 1983). Informing a person of the right to refuse consent to search is not required. Instead, the lack of such a warning is only one factor in determining the voluntary nature of consent to a search. See State v. Overton, 596 So.2d 1344, 1353 (La.App. 1st Cir.), writ denied, 599 So.2d 315 (La.1992). The trier of fact may consider the credibility of the witnesses, as well as the surrounding circumstances, in determining the issue of voluntariness. When we review a trial court ruling based upon findings of fact, great weight is placed upon the determination of the court below because it had the opportunity to observe the witnesses and weigh the relative credibility of their testimony. State v. Parfait, 96-1814, p. 13 (La.App. 1st Cir. 5/9/97), 693 So.2d 1232, 1240, writ denied, 97-1347 (La.10/31/97), 703 So.2d 20.
Our analysis of the overall circumstances herein, despite the fact that the record fails to reflect Delores was apprised of the right to refuse consent to search, convinces us the trial court did not err in concluding Delores freely and voluntarily gave her consent to search for the gun. Hence, the court's decision not to suppress the seized evidence was correct.

MOTION TO SUPPRESS STATEMENTS
Defendant contends that the trial court erred by refusing to suppress the multiple statements he made to the police. Defendant argues the statement to McQueen must be suppressed because the advice of Miranda rights preceding the statement was incomplete, i.e., the advice of his right to an attorney did not include advice that defendant had a right to appointed counsel if he could not afford to hire an attorney. Defendant argues the court further erred by not suppressing his final statement to McLellan, because it was tainted by the earlier incomplete advice of the right to counsel and that, even if it was not so tainted, he did not make a knowing and voluntary waiver of his Miranda rights when McLellan administered Miranda rights to him prior to the statement.
It is well-settled that for a confession or inculpatory statement to be admissible into evidence, the state must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menace, threats, inducements, or promises. La. R.S. 15:451; State v. Glynn, 94-0332, p. 15 (La.App. 1st Cir. 4/7/95), 653 So.2d 1288, 1301, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464. Additionally, the state must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. However, in proving an intelligent waiver of the rights to silence, self-incrimination, and counsel, the state need not show that a defendant was aware of the full evidentiary significance of his statements. State v. King, 563 So.2d 449, 453 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
Although the state's burden is great and courts must presume that a defendant did not waive his Miranda rights, such a waiver need not be explicit but rather may be inferred from the circumstances surrounding *1219 the statement, the words and actions of the defendant. North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979); State v. Brown, 384 So.2d 425, 426-427 (La.1980).
In Oregon v. Elstad, 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985), Justice O'Connor explained:
It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.
Although the testimony of Triolo and McQueen reflect each of them advised defendant of his right to counsel, there is no testimony by either of these officers and no other evidence that defendant was advised of his right to court-appointed counsel if he was indigent. The absence of such advice renders the Miranda warning given to defendant incomplete, which necessitates the suppression of the statement defendant gave to McQueen. See State v. Skiffer, 253 La. 405, 218 So.2d 313, 314 (1969). Hence, the trial court erred by failing to suppress that statement.
On the other hand, the record supports a finding that the subsequent statement defendant made to McLellan was freely and voluntarily made following a complete advice of Miranda rights administered to defendant by McLellan. While there was no explicit waiver of the Miranda rights, the actions and words of defendant more than adequately support the inference of a waiver. Defendant in his own testimony admitted he understood his rights. McLellan's testimony showed defendant acknowledged to him his understanding of the rights and his desire and willingness to make the statement. Additionally, as previously noted, at the conclusion of the statement, defendant declined to give his consent to a taped statement.
Although the statement to McQueen was technically violative of the Miranda rule, as a statement (which the record reflects was unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will), it does not "taint" the investigatory process and the subsequent voluntary statement defendant made to McLellan after full Miranda warnings and waiver of those warnings. See Oregon v. Elstad; State v. Burge, 486 So.2d 855, 860-862 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986) (in which this court adopted the Oregon v. Elstad, 470 U.S. at 309, 105 S.Ct. at 1293, holding as applicable to cases arising under Article I, § 13 of the Louisiana Constitution).
Accordingly, we affirm the trial court's ruling denying the motion to suppress physical evidence (the gun) and the ruling denying the motion to suppress the statement defendant made to McLellan. The ruling denying the motion to suppress the statement defendant made to McQueen is reversed and the motion to suppress that statement is hereby granted. Consequently, we vacate the guilty plea to the charged offense and the sentence imposed therefor and remand this matter for further proceedings consistent with this opinion.[4]
RULINGS DENYING MOTION TO SUPPRESS PHYSICAL EVIDENCE AND THE STATEMENT TO MCLELLAN AFFIRMED;
RULING DENYING MOTION TO SUPPRESS THE STATEMENT TO MCQUEEN REVERSED;
GUILTY PLEA AND SENTENCE VACATED; AND
REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Contemporaneously with the guilty plea to possession of a firearm by a convicted felon, defendant pled guilty to two other offenses, possession of cocaine and obscenity. The trial court imposed sentences of five years at hard labor for the possession of cocaine offense, and six months at hard labor for the obscenity offense and ordered that all three sentences run concurrently.
[2] The defendant's oral statement to McLellan was much more detailed than any of the earlier statements and amounted to a confession, since it contained admissions by defendant that he possessed the gun and that he was a convicted felon.
[3] The report actually reflects that, after defendant concluded his oral statement, McLellan asked defendant if he would consent to giving a tape-recorded statement of the incident. Defendant then stated: "[W]hy, it cant (sic) help me?" The report further reveals that McLellan then "advised that it is often helpful to co-operate with an investigation." Following the foregoing advice or suggestion, defendant declined to give a tape-recorded statement. Notwithstanding any assertion by defendant to the contrary, even assuming, arguendo, that the advice or suggestion had preceded defendant's statement to McLellan, such advice or suggestion clearly would not have amounted to an inducement sufficient to negate the voluntary nature of an inculpatory statement or confession. Advice or suggestions of this type, rather than being promises or inducements designed to extract a statement or confession, are more likely musings not much beyond what a defendant might well have concluded for himself. See State v. Petterway, 403 So.2d 1157, 1160 (La.1981).
[4] Because we vacate the sentence, we need not and do not address defendant's assignments of error numbers two and three relating to sentencing.