J^LeBLANC, J.
Defendant, Lavar Nelson, was charged by grand jury indictment with two counts of aggravated rape in violation of La. R.S. 14:42 and with one count of aggravated burglary in violation of La. R.S. 14:6o.[1] He pled not guilty, and, after a trial by jury, was found guilty of two counts of attempted aggravated rape on the aggravated rape charges and guilty as charged with respect to the aggravated burglary charge. Subsequently, the trial court sentenced defendant to serve consecutive forty year and forty-five year sentences at hard labor without benefit of probation, *879 parole or suspension of sentence on the two attempted aggravated rape convictions. The court additionally sentenced defendant to thirty years at hard labor on the aggravated burglary conviction to run concurrently with the attempted aggravated rape sentences. In this appeal, defendant argues the trial court erred in admitting his confession, in denying his motion to reconsider sentence, and in giving him excessive sentences.
FACTS:
Some time in the late evening of July 9, 1997, an individual broke into a home in Bogalusa located on a street directly behind the Sunset Acres housing project. Present in the home were the victim, her baby daughter, her sister, and her elderly, bedridden mother. According to the testimony of the victim and her sister, the intruder told the victim’s sister and mother to remain in the mother’s bedroom while he took the victim in another room and beat her repeatedly and then raped her. He then dragged the victim, beaten and partially clothed, to the room where her relatives were, threatened their lives again, took the victim back in the other room, and then beat and raped her for the second time. The man then hit her again and shoved her head down on his penis, forcing her to perform oral sex. The man then left the house after taking cash and jewelry from the victims.
Patrolman Patrick Lyons of the Bogalu-sa City Police Department testified he arrived at the scene of the crime and took a description of the perpetrator from the victim and her sister, describing a young black male wearing a white t-shirt and white shorts and La gold bracelet of some type. Officer Chris McClellan testified he began searching Sunset Acres, the housing project directly in front of the street where the crimes were committed, for a man meeting the description. He spoke with some individuals he saw there, giving them the description, and later, an anonymous caller reported that a man fitting this description had been seen on a bicycle in a particular area of Sunset Acres. Officer McClellan and his partner located the individual matching the description, the defendant in this case, and saw he was very nervous and jittery. The defendant informed the police he lived in the apartment building behind him, was not associated with the bicycle parked in front of him, and was 16 years old. A resident of that apartment building heard this, took the officers aside, and informed them the defendant did not live in his apartment building, had ridden up on the bicycle, was 17 years old, and had a large amount of cash on him and was trying to sell jewelry.
A search of the defendant’s pockets revealed $360.00 and some jewelry. The officers did not know of a burglary in connection with the rapes, so they put the items back in the individual’s pockets. Later, the defendant agreed to go with the officers to the scene of the crime. On the way there, Officer McClellan observed, in his rearview mirror, the defendant taking items out of his pocket and reaching toward the front seat. Officer McClellan pulled over and found some of the jewelry items he had observed earlier hidden underneath his seat. At the scene, the victim’s sister could not positively identify the defendant, but she did identify the money and jewelry as having been taken from the home.
Officer Jeff Varnado, who had located the defendant in Sunset Acres with Officer McClellan, testified he was later called back to Sunset Acres after a resident there called to report there was some jewelry on the steps near where the officers had located the defendant. This jewelry was also later identified as having been taken in the burglary. Lorraine Bell testified that she saw the defendant arrive on a bicycle in Sunset Acres and start throwing things out of his pockets when the police officers drove up. After the police had taken the defendant away, she found a lot of jewelry on the ground and called the police.
*880 Both the victim and her sister identified the defendant in a photographic line-up the day after the crimes were committed and both identified him in court as the Rperpetrator. George Schiro, the State’s expert in serology, testified defendant had blood type B, was a “Lewis type A minus, B plus,” had a PGM type one, and was a “B secretor.” A vaginal swab taken from the victim indicated the presence of spermatozoa and seminal fluid indicating H blood group characteristics which was consistent with a person having type B blood who was a “B secretor.” A general swabbing indicated seminal fluid and a B blood group substance which is indicative of a “B secretor.” There was blood present on a genital swab of the defendant and a presumptive indication of blood under his fingernails. The victim’s t-shirt had seminal fluid on it containing type B blood group substances. From the foregoing serological evidence, the witness testified he could not eliminate defendant as being the source of that seminal fluid insofar as his genetic markers which matched the characteristics of the evidence found at the scene were found in only 10 percent of the black population. Finally, Detective Scott Adams testified he took a statement from the defendant the day after the crimes occurred in which the defendant admitted he entered the home and forced the victim to have sex with him. This statement was played for the jury.
The defendant testified, denying he was the individual who entered the home and raped the victim, and claiming instead he was at his uncle’s house at the time of the crimes and went to Sunset Acres thereafter whereupon an individual sold him the jewelry for $30.00. The defendant’s uncle also testified that the defendant was with him at the time of the crimes.
ASSIGNMENT OF ERROR # 1:
By way of this assignment, defendant argues the trial court erred in admitting his confession into evidence because the confession was obtained as a result of promises or inducements made by the interrogating officers. Specifically, defendant points to testimony by Detective Scott Adams during the hearing on the motion to suppress wherein he stated: “I told him that him telling the truth would be showing that he cooperated in the investigation and that the DA would be made aware of that and it couldn’t hurt him, the only thing it could do would be help him.” Defendant also refers to the following colloquy which took place during trial between defense counsel and Detective Adams:
A. He asked me earlier what the, you know, what he was facing as far as the amount of time related to what he was charged with. I told him if |fihe was found guilty of what he was charged with he would be looking at a life sentence ....
Q. Did you give him any indication that if he confessed the charge might not be aggravated rape?
A. I told him that would not be up to me; that would be up to the district attorney to accept the charges as he was charged or to reduce them and that by him telling the truth the only thing it could do would help him.
In order for a confession to be introduced into evidence, the State must affirmatively show it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451. The State must establish this beyond a reasonable doubt. State v. Hankerson, 604 So.2d 1330, 1332 (La.App. 1 Cir.1992). The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. State v. Neese, 96-1371, p. 4-5 (La.App. 1 Cir. 3/27/97); 691 So.2d 291, 293-94, writ denied, 97-1127 (La.10/17/97); 701 So.2d 1331. Whether or not a showing of voluntariness has been *881 made is analyzed on a case by case basis with regard to the facts and circumstances of each case. Neese, 96-1371 at 5, 691 So.2d at 294. The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. Id. On appeal, the reviewing court may consider the evidence adduced both at the motion to suppress and at trial. State v. West, 408 So.2d 1302, 1307 (La.1982).
At the hearing on the motion to suppress, Detective Scott Adams testified that prior to taking the defendant’s statement, he advised defendant of his constitutional and Miranda rights, that defendant waived these rights orally and by signing a waiver of rights form, and that he did not threaten, coerce, intimidate, or make any promise to the defendant. At some point during the unrecorded portion of the interview, defendant began to make inculpatory statements admitting he committed the crimes, so Adams obtained defendant’s consent to be tape-recorded, reread him his rights, showed him the waiver of rights form, asked him if he understood the form, and proceeded to take the defendant’s statement. During the statement, defendant confessed to breaking into the home and raping the victim. Adams additionally testified that defendant was able to meet •with his girlfriend after he gave the statement. During this meeting, in Adams’ presence, 1 fihe heard defendant tell his girlfriend he did what he was being accused of, whereupon the girlfriend slapped the defendant and left. On cross-examination, Adams specifically denied that defendant had ever at any point requested an attorney and admitted he had told the defendant that the District Attorney would be made aware of defendant’s cooperation if he confessed, and that “it couldn’t hurt him, the only thing it could do would be help him.” Also testifying at the hearing on the motion was the defendant who said, without any more elaboration, that the officers were “telling [him] that they could help [him] out” if he told them certain things.
Based on the foregoing,' the trial court denied defendant’s motion to suppress his confession. This court has recognized that a simple statement by the police advising a suspect that giving a statement is often helpful is not a prohibited promise. In State v. Ford, 97-2019, p. 5, n. 3 (LaApp. 1 Cir. 6/29/98); 713 So.2d 1214, 1217, n. 3, the officer had advised a defendant it is often helpful to cooperate with an investigation. This court noted that such advice or suggestion “clearly” would not have amounted to an inducement or promise sufficient to negate the voluntary nature of a confession. “Advice or suggestions of this type, rather than being promises or inducements designed to extract a statement or confession, are more likely musings not much beyond what a defendant might well have concluded for himself.” Id.; see also State v. Petterway, 403 So.2d 1157, 1160 (La.1981) (where the Louisiana Supreme Court addressed the impact on the admissibility of a confession of an officer’s statement to a defendant that things would go easier for him if he cooperated, finding that this type of statement could not be construed as a promise affecting the voluntary nature of the confession.) Clearly, Detective Adams’ statements to the defendant that cooperating may help his case are similar to the statements which this court in Ford and the supreme court in Petterway held did not constitute impermissible promises or inducements and did not affect the voluntary nature of defendant’s confession. Furthermore, even though defendant’s very unspecific version of events differed somewhat from Detective Adams’ testimony, it is the trial court’s duty to make such credibility determinations in ruling on motions to suppress, and we see no abuse of discretion here. Finally, the tape of defendant’s statement which was introduced into evidence indicates defendant was informed of his rights and freely and voluntarily 17chose to speak with Detective Adams. As such, we find the trial court did not err in ruling defendant’s confession was admissible.
*882 ASSIGNMENTS OF ERROR #2 and #3:
In these assignments of error, defendant argues his sentences were excessive and were improperly ordered to run consecutively without an adequate factual basis. As such, defendant argues the trial court erred in failing to reconsider them. As noted earlier, defendant was sentenced to serve consecutive forty year and forty-five year sentences at hard labor without benefit of probation, parole or suspension of sentence on the two attempted aggravated rape convictions and to serve a concurrent sentence of thirty years at hard labor on the aggravated burglary conviction.
A person convicted of attempted aggravated rape shall be sentenced to not less than ten nor more than fifty years at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:27 D(l) and 14:42. A person convicted of aggravated burglary shall be sentenced to not less than one nor more than thirty years at hard labor. La. R.S. 14:60.
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may fall within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, considering the crime and punishment in light of the harm to society, it is so disproportionate as to shock one’s sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). Finally, this court has previously indicated that maximum sentences may be imposed only for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety. State v. Breland, 97-2880, p. 4 (La.App. 1 Cir. 11/6/98); 722 So.2d 51, 53.
Regarding whether the sentences should run consecutively or concurrently, if a defendant is convicted of two or more offenses based on the same act or transaction, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La.C.Cr. P. art. 883. Article 883 does not prohibit 1 sthe imposition of consecutive sentences where expressly directed by the trial court, and the imposition of consecutive sentences for convictions which arise out of a single course of conduct are not necessarily excessive. Breland, 97-2880 at 4; 722 So.2d at 53. Although the imposition of consecutive sentences for convictions arising out of the same course of conduct is not barred, it does require particular justification. La. C.Cr.P. art. 883; see State v. Tenner, 599 So.2d 1091 (La.1992); State v. Spradley, 97-2801, p. 19 (La.App. 1 Cir. 11/6/98); 722 So.2d 63, 73.
A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982); see also State v. Savario, 97-2614, p. 8 (La.App. 1 Cir. 11/6/98), 721 So.2d 1084, 1089, writ denied 98-3032 (La.4/1/99); 741 So.2d 1280; and State v. Fairley, 97-1026, p. 6 (La.App. 1 Cir. 4/8/98); 711 So.2d 349, 352-53.
At the sentencing hearing, the trial court gave lengthy reasons for the sentences imposed. After noting the evidence against defendant was “overwhelming,” the trial court stated the following:
On the night that the incident occurred the victim was in a house in Bogalusa that was occupied by the victim, her sister, her very ill mother and her young child. ' The defendant came through a window, terrorized all the *883 family, took the victim of this offense into a separate room, raped her and beat her. The photographs that were introduced in evidence in this case indicates [sic] that she was rather severely beaten by the defendant, and to make the situation worse, what does he do? He drags her by the hair of her head back into the room where her mother, sister and child [are] situated. Not satisfied with the terror that he has caused the rape victim and her family members, he takes her back into the room again, rapes her and beats her again. This night, as far as these four individuals are concerned, can be considered nothing but a night of terror, and nobody deserves this kind of treatment.
Significantly, the trial court then notes that he does not “know what’s happening to some of our juries in this case or in this parish,” because the evidence established beyond all “possible doubt” that defendant had committed aggravated rapes and not merely attempted them. “The evidence clearly showed that the rape was completed, the rape was vicious, the crime was heinous.” A conviction of aggravated rape mandates a sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:42.
[aFinally, the court addressed the distinct nature of the two attempted aggravated rapes:
Any sentence less than that to be imposed by the court would deprecate the seriousness of these offenses. Even though the crimes in this case were all part of the same plan or scheme, the rapes, or as the jury called it attempted aggravated rapes, were very much separate and distinct acts. One rape was completed, the victim dragged into another room by the hair of her head, taken back to the room and raped again. This was a situation in which the defendant manifested deliberate cruelty to the victim.... This is a situation where the offender created a risk, probably of death or great bodily harm, not only to the rape victim, but to the other persons in the residence. This is the type offense that the victim may never recover from. I think the trauma of that night will probably stay with her for the rest of her life.... It is just an unnecessary heinous offense. This defendant does not deserve the privilege and does not have the right to walk on the streets and to mingle with other members of society.
Upon our review of the trial court’s reasons as well as the entire record, we conclude the facts surrounding the instant offenses justified nearly maximum sentences for all three convictions as well as the consecutive nature of the attempted aggravated rape sentences. The crimes committed, normally heinous in their own right, were made even more atrocious by the fact they were committed in the room next to, and within earshot of, the room containing the victim’s terrified baby, sister, and bedridden mother and by defendant’s presenting the victim, .partially clothed and beaten, to her terrified relatives between the occurrences. We find the sentences imposed do not constitute a needless imposition of pain and suffering and do not shock our sense of justice, especially considering the nature of the instant offenses. Furthermore, the brutality and viciousness exhibited by defendant in his treatment of the victim and her relatives indicates a propensity for violence and which constitutes a clear risk to the public safety justifying the imposition of consecutive sentences.
These assignments of error are without merit.
CONVICTIONS AND SENTENCES AFFIRMED.

. Defendant was also charged by the same indictment with three counts of second degree kidnapping in violation of La. R.S. 14:44.1 and with one count of aggravated oral sexual battery in violation of La. R.S. 14:43.4. These counts were severed from the indictment before trial.