STATE OF LOUISIANA
v.
FERNANDO LOZA.
No. 2007 KA 1406.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
SCOTT M. PERRILLOUX, District Attorney, PATRICK W. DUNN, Asst. District Attorney, Livingston, LA, Attorneys for State  Appellee.
JAMES A. WOOD, Attorney for Baton Rouge, LA Defendant  Appellant.
Before CARTER, C.J., PETTIGREW, AND WELCH, JJ.
WELCH, J.
The defendant, Fernando Loza, was charged by bill of information with possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A)(1). He initially pled not guilty. The defendant filed a motion to suppress the evidence and/or confession. The trial court denied the motion. The defendant subsequently withdrew his not guilty plea and pled guilty as charged, reserving his right to appeal the trial court's denial of the motion to suppress. See State v. Crosby, 338 So.2d 584 (La. 1976). After accepting the defendant's guilty plea, the trial court sentenced him to the Department of Corrections for eight years. The defendant now appeals, urging a single assignment of error challenging the trial court's ruling on his motion to suppress. Finding no merit in the assigned error, we affirm the defendant's conviction and sentence.

FACTS
Because the defendant pled guilty, the facts of the offense were never fully developed at a trial. The following facts were gleaned from the testimony introduced at the hearing on the motion to suppress.
On March 10, 2005, the defendant was arrested after a traffic stop on Interstate 12 in Livingston Parish. Louisiana State Police Trooper William Hunter stopped the defendant for following too closely behind another vehicle. After obtaining the defendant's identification and engaging the defendant in general conversation, Trooper Hunter returned to his vehicle to check the defendant's information. When he returned, Trooper Hunter asked the defendant for consent to search his van. The defendant assented and signed a written consent to search form. During the search, a chest of drawers located in the rear of the defendant's van was dismantled and nine packages (approximately 34 pounds) of marijuana were discovered inside. A videotape of the stop, search, and arrest was introduced into evidence.

DENIAL OF MOTION TO SUPPRESS
In his sole assignment of error, the defendant contends the trial court erred in denying his motion to suppress the evidence. The defendant's argument in favor of suppression of the evidence is threefold. First, the defendant argues his arrest was the result of an unconstitutional pretextual stop. Specifically, he maintains that Trooper Hunter, a K-9 officer, stopped him based upon a "rumor" that he was involved in illegal drug activity and not based upon the alleged traffic violation. The defendant also argues that the motion to suppress should have been granted because the warrantless search of his vehicle was illegal as it resulted from an illegal arrest and/or detention and was based upon invalid consent.[1]
At the motion to suppress hearing, Trooper Hunter testified that he was working patrol in Livingston Parish when he observed the Chevy van driven by the defendant following too closely behind a red four-door vehicle. He initiated a traffic stop by activating his emergency lights. The defendant pulled onto the shoulder of the interstate and Trooper Hunter followed him. Trooper Hunter exited his vehicle and approached the passenger side of the defendant's van. Trooper Hunter testified that when he asked the defendant for his driver's license, the defendant indicated that he did not have it with him, but he did have identification. The defendant handed Trooper Hunter a sheet of paper containing a photocopied identification card. Trooper Hunter advised the defendant of the reason for the stop and asked him where he was going. After a brief hesitation, the defendant stated he was going to Ohio. In response to further questioning, the defendant indicated he was going to visit his sister.
As he spoke with the defendant, Trooper Hunter noticed some chairs, a large television set, and a chest of drawers inside the van. The chest of drawers was wrapped in plastic. Trooper Hunter found it "kind of suspicious" that the defendant did not mention anything about these items. Trooper Hunter also recognized (and found suspicious) the fact that although the defendant stated that he would be visiting his sister for approximately eight days, no luggage was observed inside the van. After engaging the defendant in further questioning regarding his occupation (the defendant indicated he was a mechanic) and ownership of the van (the defendant stated that the van belonged to him), Trooper Hunter asked the defendant to what city in Ohio was he traveling. According to Trooper Hunter, the defendant "took a minute" and eventually stated, "Columbus."
Trooper Hunter testified that he subsequently asked the defendant if there was anything illegal inside his van. The defendant stated there was not. Trooper Hunter asked the defendant for consent to search the vehicle. The defendant agreed to allow the search. Trooper Hunter asked the defendant if he could read Spanish. The defendant responded affirmatively. Trooper Hunter then provided the defendant with a consent to search form written entirely in Spanish. The defendant voluntarily signed the consent to search form, and Trooper Hunter began the search of the vehicle.
Trooper Hunter testified that at no time during the encounter did the defendant appear to have any difficulty understanding English. In fact, the defendant actively participated in the conversation, speaking English "the whole time."
Trooper Paul Chamorro testified that he was called to the scene of the stop as back-up for Trooper Hunter. Although Trooper Chamorro was fluent in Spanish, he testified that he spoke to the defendant in English, and the defendant did not have any difficulty understanding him. Trooper Chamorro further testified that once the marijuana was found, he placed the defendant under arrest and advised him of his Miranda rights. Although Trooper Chamorro could not specifically recall whether the Miranda rights were recited in Spanish or English, he noted that because the defendant understood the English language, there would not have been any reason for him to specifically recite the rights in Spanish only. The videotape of the stop reflects that the rights were recited in both languages.
Trooper Chamorro further testified that the consent to search form used by the Louisiana State Police is self-explanatory. He explained, "[w]e don't have to read the form to them. The form tells you everything about it." Trooper Chamorro further testified that the document introduced as defense exhibit 1 contained an English and Spanish version of the consent form. The unsigned English version of the form is an equivalent translation of the Spanish version of the form signed by the defendant.

Pretextual Stop
At the outset, we note that the defendant does not dispute that he committed a traffic violation. Instead, he argues only that the traffic stop was a pretext for a drug investigation. The defendant argues that the real motive for the stop was revealed on the videotape when Trooper Hunter stated, "It's got to be here somewhere, [the driver in] the other car said he was with him."[2] The defendant argues this particular statement clearly shows that the traffic stop was pretextual and thus, the resulting evidence should have been suppressed.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. Measured by this standard, La. C.Cr.P. art. 215.1, as well as federal and state jurisprudence, recognizes the right of a law enforcement officer to temporarily detain and interrogate a person whom he reasonably suspects is committing, has committed, or is about to commit a crime. Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the specific facts of each case on the basis of whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Robertson, 97-2960, pp. 2-3 (La. 10/20/98), 721 So.2d 1268, 1269.
As a general matter, the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whren v. U.S., 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Although they may serve, and may often appear intended to serve, as a prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. State v. Waters, XXXX-XXXX, p. 4 (La. 3/12/01), 780 So.2d 1053, 1056 (per curiam). Louisiana Revised Statutes 32:81(A) provides: "Nile driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."
When reviewing a trial court's ruling on a motion to suppress based upon findings of fact, great weight is placed upon its determination because the trial court had the opportunity to observe the witnesses and weigh the relative credibility of their testimony. State v. Parfait, 96-1814, p. 13 (La. App. 1st Cir. 5/9/97), 693 So.2d 1232, 1240, writ denied, 97-1347 (La. 10/31/97), 703 So.2d 20.
In the instant case, to support his argument that the vehicle stop was unconstitutional, the defendant cites U.S. v. Smith, 799 F.2d 704, 709 (11th Cir. 1986), a federal case wherein the Eleventh Circuit held that a stop is valid only if "under the same circumstances a reasonable officer would have made the stop in the absence of the invalid purpose." In Whren, however, the United States Supreme Court rejected the "would-have" test, as utilized in Smith, and adopted the "could-have" test for Fourth Amendment reasonableness. The Court reasoned that the "would-have" test was one aimed at reaching subjective intent through objective means in contravention of precedent holding that the "Fourth Amendment's concern with `reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." Whren, 517 U.S. at 814, 116 S.Ct. at 1775.
The Louisiana Supreme Court cited the Whren case in State v. Lopez, XXXX-XXXX, p. 3 (La. 10/30/00), 772 So.2d 90, 92 (per curiam). In Lopez, the court stated, "[w]ithout regard to the trooper's subjective intent, respondent's speeding above the posted limit gave the officer an objective probable cause basis to pull over the vehicle for a traffic violation." The court quoted from Whren stating, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Lopez, XXXX-XXXX at p. 3, 772 So.2d at 92 (quoting Whren, 517 U.S. at 813, 116 S.Ct. 1774).
Considering the foregoing, it is clear that the defendant's claim that the motion to suppress should have been granted based upon the alleged unconstitutionality of the initial stop lacks merit. Trooper Hunter stopped the defendant after having observed him tailgating another vehicle in violation of the traffic laws. Thus, Trooper Hunter possessed the probable cause necessary to effectuate the traffic stop. Any subjective intent to question the defendant about illegal drug activity is not significant. As previously noted, subjective intentions of the officers are not relevant in determining the constitutional reasonableness of traffic stops. See State v. Hardeman, XXXX-XXXX, pp. 4-5 (La. App. 1st Cir. 2/18/05), 906 So.2d 616, 622. Therefore, even though it appears from the videotape that Trooper Hunter may have suspected prior to the stop, that the defendant was involved in illegal drug activity, the stop was nonetheless proper because Trooper Hunter had an objective reason to stop the defendant for the traffic violation.

Illegal Detention and/or Arrest
The defendant also appears to argue that he was illegally detained. He asserts that the reasons cited by Trooper Hunter as justification for the continued detention after the initial stop were insufficient to justify the detention. The defendant further asserts that he was illegally arrested as a result of the lengthy detention and Trooper Hunter's instructing Trooper Chamorro to "watch him" and prevent him from running. He argues that, "[i]f he was placed in a position where he could not run, he was arrested."
An officer may temporarily detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Louisiana Code of Criminal Procedure article 215.1(D) states, in pertinent part, that in conducting a traffic stop "an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity."
The United States Supreme Court has recognized that "if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop." U.S. v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). An extensive detention can invalidate consent to search even after a valid traffic stop. See State v. Bunnell, 517 So.2d 439, 441 (La. App. 1st Cir. 1987). In determining whether a detention is too lengthy to be considered as an investigatory stop, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. Sharpe, 470 U.S. at 686, 105 S.Ct. at 1575. The court cautioned a reviewing court making this assessment to "take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." Id.
The videotape of the traffic stop in this case reflects that the defendant was stopped for the traffic violation at approximately 6:57 a.m. Trooper Hunter spoke with the defendant for approximately three minutes (until 7:00 a.m.) before returning to his vehicle with the defendant's identification information. Three minutes later, at 7:03 a.m., Trooper Hunter returned the defendant's identification information and advised the defendant to back off of the other vehicles. At this point, the traffic stop was concluded. Thereafter, Trooper Hunter promptly proceeded to request consent to search the defendant's van. At 7:04 a.m., only seven minutes after the initial stop, the defendant granted consent to search the vehicle.
Contrary to the defendant's assertions, the evidence reflects that the defendant was not detained for a lengthy period of time. We find that Trooper Hunter diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly. The time period of seven minutes for the traffic stop before the defendant was asked to consent to the search was not an unreasonable length of detention to exceed the scope of the initial stop. At the conclusion of the investigation into the traffic violation, the encounter was immediately extended when the defendant consented to the search of his van. Trooper Hunter did not need any degree of reasonable suspicion to ask for, and receive, the defendant's consent to search the van. See State v. Strange, XXXX-XXXX, p. 6 (La. 5/14/04), 876 So.2d 39, 42 (per curiam). Although approximately 45 minutes elapsed between the initial traffic stop and the defendant's arrest, most of that time was consumed by the very thorough search of the van and its contents. The location from which the marijuana was discovered (inside the structure of the chest of drawers) shows that such a thorough search was necessary. Furthermore, it is significant that the physical intrusiveness of the stop did not intensify. The defendant was not handcuffed and/or placed in the police vehicle. The defendant remained unrestrained until after the marijuana was discovered. The consent to search form signed by the defendant specifically advised that the defendant could refuse to consent to any search and that he could revoke his consent to search at any time.[3] Accordingly, we find that defendant was notified of his right to refuse consent and/or restrict the scope of the search by revoking his consent. The defendant chose not to exercise these rights during the search. Thus, we find no merit in the defendant's claim that he was unlawfully detained.
We likewise find no merit in the defendant's claim that he was illegally arrested prior to the discovery of the marijuana. An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Commodore, 418 So.2d 1330, 1333 (La. 1982). An arrest takes place when a reasonable person would feel that he was not free to leave. See U.S. v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In the instant case, the videotape of the stop reflects that the statement the defendant takes issue with was made shortly after Trooper Hunter gathered the defendant's identification information and went over to his vehicle to check it. Trooper Hunter stated to Trooper Chamorro, "watch him, make sure he don't (sic) run. He's nervous." This statement was made at Trooper Hunter's patrol vehicle while the defendant was still seated inside his own vehicle. Thus, it is unlikely that the defendant was aware that the statement was even made. More importantly, the statement was made during the initial detention in connection with the traffic violation. Thus, the defendant was not free to leave at that point. However, even if the statement had been made later during the encounter, because it was not made in the defendant's presence, the statement could not have possibly caused the defendant to believe that he was not free to leave. Trooper Hunter testified at the motion to suppress hearing that at all times prior to the discovery of the marijuana, the defendant was not under arrest and was free to leave.

Consent to Search
The defendant also argues the search of his vehicle was illegal. As previously noted, the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D). A valid consent search is a well-recognized exception to the warrant requirement, but the burden is upon the State to prove that the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case. See State v. Wilson, 467 So.2d 503, 518 (La. 1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). The trier of fact may consider the credibility of the witnesses, as well as the surrounding circumstances, in determining the issue of voluntariness. State v. Ford, 97-2019, p. 7 (La. App. 1st Cir. 6/29/98), 713 So.2d 1214, 1218.
In the instant case, it is undisputed that the defendant provided written consent to the search of his vehicle. The defendant alleges his consent to search was invalid because the consent to search form provided by Trooper Hunter was not explained to him in Spanish. In support of his challenge to the validity of the written consent, the defendant claims Trooper Hunter approached him and inquired whether he spoke Spanish. When he responded affirmatively, the defendant claims Trooper Hunter replied, "sign this." The defendant claims Trooper Hunter did not provide any further explanation of the document and/or its contents.
Initially, we find the defendant's claims that Trooper Hunter simply handed him the form and stated, "sign this" to be unsupported by the record. The videotape of the stop reflects that after asking if the defendant had anything illegal in his van, Trooper Hunter asked for consent to search. Once the defendant indicated that he would allow the search, Trooper Hunter produced a copy of the consent to search form. He specifically asked the defendant if he could read Spanish. When the defendant responded affirmatively, Trooper Hunter instructed him to read the form and if he agreed with it, "sign right there." Voicing no objections, the defendant signed the form signifying that he voluntarily authorized Trooper Hunter to search his vehicle. Trooper Hunter then proceeded to conduct a search of defendant's vehicle. Trooper Hunter testified that no force was used to obtain the signature, and defendant does not allege to the contrary. In this case, defendant introduced no evidence tending to show that his signature on the written consent form was the result of any form of coercion or promise. On the contrary, the facts in this case, as set forth above, clearly disclose the giving of a free and voluntary consent. It is clear from viewing the videotape of the stop that the defendant sufficiently understood (and spoke) the English language. He appeared to understand Trooper Hunter when he asked for permission to search the van and he freely gave his consent. Furthermore, we note that while the defendant complains that the consent form was not explained to him in Spanish, he does not specifically allege that he did not understand the contents of the form. The trial court did not err or abuse its discretion in finding the consent to search was valid.
We find no error in the trial court's denial of the defendant's motion to suppress. This assignment of error lacks merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In his brief, the defendant references to the several "inconsistencies" between Trooper Hunter's testimony at the preliminary examination, his testimony at the motion to suppress hearing, and the events documented on the videotape. We note that these alleged inconsistencies are insignificant in that the videotape of the entire encounter was introduced into evidence and considered by the trial court. Thus, the trial court was aware of any inconsistencies and was not forced to decide the motion to suppress based solely upon Trooper Hunter's account of what transpired.
[2] We note that the videotape revealed that Trooper Hunter actually stated: "It's got to be somewhere, dude [a pause] because [the driver in] the other car admitted that they were with him."
[3] We note that the English version of the consent to search form reads, Inio promise, threat, or coercion of any kind has been made against me by the Louisiana Office of State Police and I have been informed by the above named State Police Officer that I may refuse to consent to any search and that I may revoke my consent to search at any time." Trooper Chamorro testified that the Spanish version of the faun contains an equivalent provision.